THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT L. WILLIAMS, Defendant-Appellant.

Fourth District No. 4—97—0375

Opinion filed November 16, 1998.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

In April 1997, defendant, Robert L. Williams, was convicted after a jury trial of possession of a stolen vehicle, a Class 2 felony (625 ILCS 5/4—103 (West 1996)) that carries a prison term of 3 to 7 years (730 ILCS 5/5—8—1(a)(5) (West 1996)) and an extended term of 7 to 14

years (730 ILCS 5/5—8—2(4) (West 1996)). Later that month, defendant was sentenced to an extended term of 10 years. Defendant filed no postsentencing motions but now appeals his sentence. We affirm.

At jury trial in January 1997, the State presented testimony from Vincent and Maribeth Schauf, co-owners of an automobile, to establish that in September 1996, their car, which was parked with the keys inside, was stolen. Broken glass was found where the car was located. Lexington police officer Brian Hoggins testified defendant appeared confused when he encountered him at a gas station that evening. Defendant stared at Hoggins and circled the car he had been driving, which had a broken window, before entering the car and driving off.

Hoggins stopped defendant and arrested him after a license plate check revealed defendant was driving a stolen vehicle. A search of the car revealed a copy of the Schaufs' title to the car. Defendant did not testify or present any evidence. He relied solely on his statements to Hoggins at the time of the arrest that he had borrowed the car from a friend. The jury found defendant guilty.

Defendant's sentencing hearing was held in April 1997. It was consolidated with a pretrial conference on a pending charge of retail theft (720 ILCS 5/16A—3 (West 1996)), case No. 96—CF—1331. The parties agreed defendant was eligible for an extended sentence for the charge of possession of a stolen vehicle. Defendant is a 40-year-old man with an extensive criminal record. He had been convicted of armed robbery (Knox County, 1981); two counts of battery (Peoria County, 1975 and 1988); four counts of burglary (Peoria County, 1975; Fulton County, Georgia, 1989; and De Kalb County, Georgia, 1990 and 1991); residential burglary (Cook County, 1993); criminal trespass (De Kalb County, Georgia, 1990); theft (Kane County, 1974); theft by receiving stolen property (De Kalb County, Georgia, 1990); theft over $300 (in 1996); four counts of retail theft (Peoria County, 1980 and 1985; and Cook County, 1989 and 1996); obstructing a peace officer (Peoria County, 1988); resisting arrest (Peoria County, 1974); public indecency (Woodford County, 1985); and drinking on a public way (Cook County, 1992). Defendant was on mandatory supervisory release when he committed this offense and allegedly committed the retail theft. According to the report, defendant stated he had been using cannabis periodically for about 15 years and cocaine for about 10 years.

Defendant has a limited education and there was evidence he may also have suffered from a mental illness. Sentencing was continued until April 1997 to allow defendant time to prepare an expert report on defendant's fitness for sentencing. At the sentencing hearing, it was established defendant had been taking psychotropic drugs since

October 1996. A letter from a psychiatrist, Dr. B.R. Damera, indicated the psychotropic medications did not substantially affect defendant's decision-making ability, but despite the medications, he had auditory hallucinations. According to defendant's presentence report, defendant stated he suffered from delusions, and his health was deteriorating due to his HIV-positive status (human immunodeficiency virus). According to notes of Damera and another psychiatrist who had seen him in custody, defendant seemed disorganized and confused, and he had some memory problems. No other evidence of aggravation or mitigation was presented by either party.

At the sentencing hearing in April 1997, the court ruled there was no need to hold a fitness hearing because there was no *bona fide* doubt as to his fitness. See 725 ILCS 5/104—11(a) (West 1994). The court found defendant's emotional condition was a mitigating factor, but that defendant's criminal history indicated a substantial prison term was warranted. The court dismissed the retail theft case, and the State elected not to prosecute a pending aggravated battery charge. The court sentenced defendant to an extended 10-year prison term, with 221 days' credit for time served, and restitution. Defendant did not file any postsentencing motions. He appeals his sentence, arguing the trial court failed to give adequate weight to his mental disease as a mitigating factor.

■ As a threshold matter, the parties dispute whether defendant has waived this issue by his failure to file a postsentencing motion challenging his sentence at the trial level. Section 5—8—1(c) of the Unified Code of Corrections (Code) provides, in pertinent part:

> "A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed. *A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence.* However, the court may not increase a sentence once it is imposed." (Emphasis added.) 730 ILCS 5/5—8—1(c) (West 1996).

The emphasized language was added by an amendment in 1993. Pub. Act 88—311, § 15, eff. August 11, 1993 (1993 Ill. Laws 2604, 2615).

Prior to the amendment, the supreme court interpreted the statute to be permissive and not mandatory, and a defendant was not required to file a postsentencing motion to preserve sentencing issues for review. *People v. Lewis*, 158 Ill. 2d 386, 390-91, 634 N.E.2d 717, 719-20 (1994). This district held the amendments did not change that result. *People v. Williams*, 285 Ill. App. 3d 394, 403, 673 N.E.2d 1169, 1175 (1996); *People v. Porter*, 285 Ill. App. 3d 50, 52, 676 N.E.2d 1, 2-3 (1996). The second district and two divisions of the first district,

however, held a postsentencing motion was required. *People v. Moncrief*, 276 Ill. App. 3d 533, 535, 659 N.E.2d 106, 108 (1995) (second district); *People v. Rogers*, 286 Ill. App. 3d 825, 832, 677 N.E.2d 13, 18 (1997) (first district, fifth division); *People v. Reed*, 282 Ill. App. 3d 278, 280, 668 N.E.2d 51, 53 (1996), *aff'd*, 177 Ill. 2d 389, 686 N.E.2d 584 (1997) (first district, second division); *contra People v. McCleary*, 278 Ill. App. 3d 498, 501-02, 663 N.E.2d 22, 24-25 (1996) (first district, first division). While the present case was pending on appeal, the supreme court ruled that, due to the added language, a defendant is required to file a postsentencing motion before appealing a sentence. *Reed*, 177 Ill. 2d at 393-94, 686 N.E.2d at 586.

The parties dispute whether the holding of *Reed* should be applied retroactively to this case.

■ The traditional rule is that *statutes* are presumed to apply prospectively only and will not be given retroactive effect absent clear language within the statute indicating that the legislature intended such effect. *First of America Bank, Rockford v. Netsch*, 166 Ill. 2d 165, 182, 651 N.E.2d 1105, 1112-13 (1995). More recently it has been held that the better approach is to apply the law that applies by its terms at the time of the appeal, unless doing so would interfere with a vested right. *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 290, 664 N.E.2d 36, 40 (1996). No vested rights are involved where the rights are not yet perfected or where the amendment is procedural in nature. *Armstead*, 171 Ill. 2d at 290, 664 N.E.2d at 40. The legislature still has the power to declare when its statutes should apply, but in situations where it is uncertain what the legislature intended, for example, the application of a statute amended while a case is on appeal, the *Armstead* rule will apply.

■ The traditional rule has been that *judicial decisions* are applied retroactively, that is, that they are applied whenever they can be applied. The traditional rule follows the suggestion that judges do not make law, they only discover it. *Linkletter v. Walker*, 381 U.S. 618, 622-23, 14 L. Ed. 2d 601, 604-05, 85 S. Ct. 1731, 1734 (1965). The United States Supreme Court got away from the traditional rule when it adopted new constitutional rules in criminal procedure cases in the 1960s, but there has been a return to the rule in recent years. See W. LaFave & J. Israel, Criminal Procedure § 2.9 (2d ed. 1992). New constitutional rulings are now applied retroactively to cases not yet final, including those that are on appeal at the time the ruling is made. With certain exceptions, new constitutional rulings will not be applied, however, to cases that have become final and that are attacked collaterally, such as by the filing of a postconviction petition. *People v. Moore*, 177 Ill. 2d 421, 430, 686 N.E.2d 587, 592-93 (1997),

following *Teague v. Lane*, 489 U.S. 288, 304-05, 103 L. Ed. 2d 334, 352, 109 S. Ct. 1060, 1072 (1989). The crux of the current rules, both as applied to statutes and as applied to judicial decisions, is that new law will be applied in all cases unless there is some reason not to apply it.

■ Section 5—8—1(c) was amended effective August 11, 1993, well before the sentencing hearing in this case. If section 5—8—1(c) unambiguously required the filing of a postsentencing motion, defendant could, and should, have complied with section 5—8—1(c) before bringing this appeal. If the change in the law is viewed as originating with a new ruling in *Reed*, then, under the analysis set out above, that new ruling could be applied to cases then on direct review. There may be a reason not to apply *Reed* in this case, however. Although procedural rules do not implicate vested rights, the essence of a procedural rule is that it is definite and that litigants have some opportunity to comply with it. Defendant had no opportunity to comply with any rule originating in the *Reed* decision, which was decided after defendant had filed his appeal. The argument could be made that the requirement to file a postsentencing motion originated in section 5—8—1(c). It is difficult to fault defendant for not accepting that argument, as we did not accept it ourselves, as demonstrated by the decisions in *Williams* and *Porter*. Nevertheless, this court has already decided that *Reed* should be applied to cases like this one, concluding that there is only one appellate court, and a litigant has no basis for relying on the decisions of his appellate court and ignoring the decisions of other districts. *People v. Corrie*, 294 Ill. App. 3d 496, 505-08, 690 N.E.2d 128, 134-36 (1998). We decline to overrule *Corrie*. Defendant has waived the issue he presents on this appeal by not filing a postsentencing petition.

Even if the issue were not waived, the trial court expressly considered evidence of defendant's mental illness as a mitigating factor. Defendant notes the trial court did not mention his HIV status, his age, or his education. We are not persuaded, however, that the trial court did not consider those factors. The trial court could also consider defendant's prior criminal history, both in deciding to impose an extended term (730 ILCS 5/5—5—3.2(b)(1) (West 1996)) and in deciding the length of the extended term (730 ILCS 5/5—5—3.2(a)(3) (West 1996)), despite defendant's evidence of health or mental problems. See *People v. Anderson*, 211 Ill. App. 3d 140, 144, 569 N.E.2d 1178, 1182 (1991). In light of defendant's criminal record, and the discretion given to the trial court, we cannot conclude the trial court erred in its sentencing decision.

For the above reasons, we affirm.

Affirmed.

GARMAN, P.J., and GREEN, J., concur.